UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JESSICA MILES,

                                Plaintiff,

               - against -

VABLE LLC d/b/a WOW AMERICAN EATS
and SUMI CHEN, in her individual capacity,

                                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-5167 (PKC) (SIL)

PAMELA K. CHEN, United States District Judge:

      This matter was tried before a jury in May 2023, resulting in a defense verdict on all claims. Before the Court is Plaintiff Jessica Miles's ("Miles" or "Plaintiff") motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure ("Rule 59"). For the reasons stated herein, Plaintiff's motion is denied.

## BACKGROUND[1]

      Plaintiff commenced this action against her former employer Vable LLC, d/b/a Wow American Eats ("Vable" or "the Restaurant"), and SuMei Han ("Han")[2] (collectively, "Defendants") on October 27, 2020. (Compl., Dkt. 1, at 8.) Plaintiff alleged gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") against Defendant Vable, along with gender discrimination, aiding and abetting, and retaliation in

---

[1] The Court assumes the parties' familiarity with the underlying facts in this matter. As such, this section provides a brief summary of the background of the case and the relevant procedural history. Substantive evidence elicited during the trial relevant to specific issues is summarized in the Discussion section.

[2] Han was erroneously identified as "Sumi Chen" in the Complaint. (*See* Answer, Dkt. 16, at 1.) Plaintiff does not dispute the corrected name and identifies her as "SuMei Han" in Plaintiff's moving papers. (*See, e.g.*, Dkt. 53-1, at 1.)

violation of the New York State Human Rights Law ("NYSHRL"), §§ 296(1)(h), (6), and (7) respectively,[3] against all Defendants. (*See generally* Compl., Dkt. 1.)

Trial in this matter took place before a jury between May 8–10, 2023. Four witnesses testified at trial: Plaintiff; Plaintiff's domestic partner, Keith Anthony; Defendant Han; and Joshua Chen ("Chen"), who is Han's son and the Restaurant's owner.[4] (Dkt. 34-1, at ECF 3.)[5]

Plaintiff testified as follows. Plaintiff was hired as a line cook at the Restaurant in early 2020. (*See* Trial Trs., Dkt. 53-2 ("Tr."), at 263:16–25.) Another employee at the Restaurant, Brian Rivers, who also worked as a line cook, behaved in a sexually inappropriate manner towards her on multiple occasions starting in February 2020. (*Id*. at 47:23–48:1, 48:18–49:25, 51:4–11, 52:13–53:7, 61:15–17.) Defendants failed to take corrective action against Rivers despite multiple complaints from Plaintiff. (*See id*. at 51:14–52:12, 54:4–11, 62:9–14, 63:2–24.) As a result of her complaints, Plaintiff faced retaliation from Defendants in the form of reduced work and eventual termination from her job in April 2020. (*See id*. at 56:5–57:22, 233:21–23.)[6]

---

[3] Section 296(l)(h) of the NYSHRL states, in relevant part, that: "It shall be an unlawful discriminatory practice . . . [f]or an employer . . . to subject any individual to harassment because of an individual's . . . sex . . . ." N.Y. Exec. Law § 296(1)(h). Section 296(6) states that: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." *Id.* § 296(6). Finally, Section 296(7) states, in relevant part: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." *Id.* § 296(7).

[4] Although Chen owned the Restaurant, he was not named as a defendant in the Complaint. (*See* Compl., Dkt. 1, ¶¶ 7–15; Tr. at 245:16–18.)

[5] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[6] On cross-examination, Plaintiff acknowledged consulting with a doctor for ADHD, anxiety, and depression prior to the alleged sexual harassment at the Restaurant, that she had been diagnosed with ADHD from about 2008 or 2009, and that "for [her] entire life [she'd] been in

Defendant Han testified that Plaintiff never notified her of any sexual harassment by Rivers, (*id.* at 291:3–19), and Chen testified that Plaintiff was terminated because she abandoned her job by not coming in for two days after indicating that she would no longer work at the Restaurant unless she got a raise, (*id.* at 228:11–17). Chen further testified that despite being employed as a financial advisor at an accounting firm,[7] he principally ran the Restaurant and that his mother, Han, only helped with secondary duties, such as "making schedules and ordering merchandise[]." (*Id.* at 144:25–145:25, 168:22–169:17.) On cross-examination, however, Chen testified that his mother attended a corporate training conference in New Orleans with him so that she could learn "areas of managing the restaurant that [Chen] wanted her to help out [on]," and Han was in charge of "[m]erchandise organizing, merchandise management," and scheduling. (*Id.* at 174:10–22, 176:1–17, 178:5–13, 179:5–180:7.) Chen also testified that his mother made "no decisions without [his] say-so." (*Id.* at 181:6–7.)[8]

---

therapy[.]" (*Id.* 94:2–9, 94:25–95:3, 95:22–24.) In summation, Plaintiff's counsel did not dispute these facts, instead arguing, "Ms. Miles has sought help in the past. I think in this day, that a lot of us have, and if not us, someone we know and we're close to. And I think the fact that someone might have sought help and even taken pharmaceutical drugs in the past doesn't mean that they're just a broken person and that they're not capable of sustaining any further damages." (*Id.* at 329:13–19.)

[7] Chen testified that between late February to early April 2020, i.e., during the three-month period at issue, he was "essentially on leave" from his job. (*Id.* at 170:1–5.)

[8] Chen's and Han's respective roles in managing the Restaurant was relevant to whether Defendant Vable could be held liable for any sexual harassment that the jury found proven. (*See* Jury Instrs., Dkt. 47, at 14 ("Finally, Plaintiff must prove that Defendant Vable should be held responsible for the hostile work environment she was subjected to. To do that, Plaintiff must show either that: (1) the hostile work environment was created by her immediate supervisor or anyone with higher authority over her, or (2) the hostile work environment was created by one of Plaintiff's colleagues, and Vable or high-ranking officials at Vable knew or should have known about the colleague's conduct, but did not intervene.").) It was also relevant to whether Han, who was also named as a Defendant, could be held liable individually under the NYSHRL. (*Id.* at 18–19 ("The NYSHRL has more expansive liability than Title VII. In addition to allowing an employer, such as Vable, to be found liable for employment discrimination, an individual employee, such as

On May 10, 2023, after a three-day trial, the jury returned a verdict in favor of Defendants on all counts, finding that Plaintiff had not proved any of her claims by a preponderance of the evidence. (*See* Jury Verdict Sheet, Dkt. 48.) Plaintiff filed a motion for a new trial on June 23, 2023. (Mem. L. Supp. Mot. New Trial, Dkt. 53-1 ("Pl.'s Mem.").) Defendants filed their opposition papers on July 20, 2023. (Mem. L. Opp. Mot. New Trial, Dkt. 55 ("Defs.' Opp'n").) No reply memorandum was filed, and the motion was therefore fully briefed as of July 20, 2023.

## LEGAL STANDARD

Rule 59(a) empowers a district court to set aside a jury verdict and order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "The decision whether to grant a new trial following a jury trial under Rule 59 is 'committed to the sound discretion of the trial judge.'" *Stoma v. Miller Marine Servs., Inc.*, 271 F. Supp. 2d 429, 431 (E.D.N.Y. 2003) (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992)). When deciding a Rule 59(a) motion, a district court "may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012). Jury verdicts, however, "should be disturbed with great infrequency." *Id*. In particular, when "a verdict is predicated almost entirely on the jury's assessments of credibility, such a verdict generally should not be disturbed except in an egregious case, to correct a seriously erroneous result, or to prevent a

---

Defendant Han, may be found liable too. Specifically, if you find: (1) either that Ms. Han had an ownership interest in Vable, or that she exercised managerial or supervisory responsibilities at Plaintiff's workplace, and (2) that Plaintiff has proved all of the other elements of her NYSHRL claim (whether for discriminatory termination, hostile work environment, or retaliation) as to Ms. Han, then you should find Ms. Han individually liable for that claim.").)

miscarriage of justice." *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 99 (2d Cir. 2014) (quoting *Raedle*, 670 F.3d at 418–19).

## DISCUSSION

Plaintiff makes two arguments in support of her request for a new trial: (1) the jury's verdict was against the clear weight of the evidence, and (2) Plaintiff's right to a jury of her peers was violated because there were no women or African Americans in the jury. (Pl.'s Mem. at 3–8.) The Court considers each of these arguments in turn.

### I.   The Weight of the Evidence

First, Plaintiff argues that Defendant Han's and Chen's trial testimony was "inconsistent and otherwise unreliable" and therefore not credible. (*Id.* at 3–6.) Plaintiff compares their testimony to her own, which she argues was "unimpeached" and "consistent" and therefore "should be accepted as fact, even when controverted." (*Id.* at 6–8.) Specifically, Plaintiff points to alleged inconsistencies in Chen's and Han's testimony regarding who managed the daily operations at the Restaurant, noting that Han testified to being at the premises "every day from open[] to close," (Tr. at 279:23–25), and was featured as the point-of-contact on the first page of the Employee Handbook, (Dkt. 53-3 ("Employee Handbook"), at ECF 2), despite having an ostensibly secondary role in the business that was limited to "scheduling" and "ordering merchandise[]," (Tr. at 144:25–145:25). Plaintiff also points to the contradiction between Han's denial that Plaintiff ever complained to her about sexual harassment and Plaintiff's own testimony. (*Compare id.* at 51:14–52:12, 54:4–11, 62:9–14, 63:2–6, *with id.* at 291:3–19.) Further, the parties offer conflicting testimony on whether Plaintiff was removed from the schedule due to retaliation, (*id.* at 56:5–57:22), or because she had abandoned her job by not showing up for two days, (*id.* at 274:4–275:3). Plaintiff contends that "due [to] the repeated and pervasive impeachments [sic] of Defendants' testimony, Mr. Chen and Ms. Han's denial that these assaults and harassments occurred should be given no weight and Defendants

5

should be seen as having failed to take immediate and appropriate corrective action." (Pl.'s Mem. at 7.)

Defendants' opposition papers are thin and largely reiterate the jury's verdict that Plaintiff failed to prove her claims by a preponderance of the evidence.  Defendants also argue that Han's alleged status as a manager at the Restaurant was irrelevant because "[Plaintiff's] termination was a result of abandoning her job while on probation, not due to her non-existent complaints of sexual discrimination being directed towards her."  (Defs.' Opp'n at 5.)  Defendants further dispute Plaintiff's characterization of Han and Chen's testimony, contending that, "[t]hroughout the trial, both witnesses have consistently confirmed that Ms. Han has no official title, no authority and is not on the company's payroll."  (*Id.*)

For purposes of a Rule 59 motion, "a decision is against the weight of the evidence . . . if and only if the verdict is seriously erroneous or a miscarriage of justice."  *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002).  Having presided over the trial and upon review of the trial record, the Court cannot conclude that the high standard for setting aside a jury's verdict has been satisfied in this case.  This case presents a classic credibility contest between two sides where the only evidence offered at trial is the parties' opposing testimony.  Although Plaintiff elicited inconsistencies in Chen's and Han's testimony at trial, (*see* Pl.'s Mem. at 3–6), the jury was nonetheless free to credit some or all of their testimony.  There simply was no "smoking gun" in this case that rendered any witness's testimony patently incredible.[9]  Furthermore, the jury was not

---

[9] The Court notes that the elicitation on cross-examination—as opposed to being fronted on direct examination—that Plaintiff had suffered from mental health problems prior to the incidents at issue could have led the jury to doubt her testimony, especially after her own counsel raised the specter in his summation of her being a "broken person." (Tr. at 329:16–19 ("And I think the fact that someone might have sought help and even taken pharmaceutical drugs in the past doesn't mean that they're just a broken person and that they're not capable of sustaining any further damages.").)

required to choose either side to believe; they could have found neither side worthy of belief, leaving the jury unable to determine what actually happened.  (*See* Jury Instrs., Dkt. 47, at 8 ("If you find that the credible evidence on a given issue is in balance or evenly divided between the parties, that it is equally probable that one side is right as it is that the other side is right, or that the evidence produced by the party having the burden of proof is outweighed by evidence against their claim, then you must decide that issue against the party having the burden of proof.  That is because the party bearing the burden, must prove more than simply equality of evidence—they must prove the element at issue by a preponderance of the evidence.").)  In addition, there were several decisional points at which the jury could have found the evidence insufficient to prove Plaintiff's claims.  For example, the jury could have believed that Plaintiff was sexually harassed by Rivers, but that Plaintiff only reported those incidents to Han and that Han did not exercise managerial or supervisory responsibility at the Restaurant.  In sum, where, as here, the jury's verdict "turned substantially or entirely on the evaluation of the parties' credibility," the Court is not convinced that a miscarriage of justice would result absent a new trial.  *Giles v. Rhodes*, 171 F. Supp. 2d 220, 226 (S.D.N.Y. 2001) (finding it "obvious . . . that [the jury] credited the defendants' testimony over the plaintiff's").

Accordingly, the Court finds no basis in the record to conclude that the jury verdict was against the weight of the evidence and denies Plaintiff's motion for a new trial on this ground.

## II.     The Composition of the Jury

Plaintiff also seeks a new trial because her claims of sexual harassment and discrimination were heard by "an all-male jury, one also lacking any African Americans."  (Pl.'s Mem. at 1.)  At the same time, Plaintiff "does not contest that the process of jury selection was in any way suspect."  (*Id.*)  Instead, she simply puts forward a bare assertion that, "the only possible explanation" for the jury favoring Defendants' testimony over hers is that "the all-male make-up of the jury nullified

7

[her] claims." (*Id.* at 8.)  Defendants respond to this argument with several rhetorical questions and assert that Plaintiff's argument is a "gratuitous after thought." (Defs.' Opp'n at 6.)

The Court agrees that Plaintiff's argument is patently unavailing, offering no basis in fact or law.  Plaintiff does not cite to any authority for granting a new trial based on conclusory statements claiming jury bias—especially where, as in here, Plaintiff failed to raise a *Batson* challenge at trial and even now, post-trial, does not claim that jurors were systemically excluded based on gender or race.  (Pl.'s Mem. at 8.)  Even if Plaintiff were making such an argument, she would need to substantiate her claim with sufficient and particularized evidence, none of which exists here.  *See Espaillat v. Cont'l Express, Inc.*, 33 F. App'x 567, 569 (2d Cir. 2002) (summary order) ("Espaillat's arguments that the jury selection excluded Hispanic jurors are neither supported by the evidence nor sufficiently particularized or proven to require a new trial."). Further, it is well-settled that conclusory allegations of unfair prejudice are insufficient evidence to demonstrate a "miscarriage of justice" warranting a new trial.  *See Ullman v. Starbucks Corp.*, 152 F. Supp. 2d 322, 327 (S.D.N.Y. 2001) (denying a new trial where plaintiff alleged in a conclusory manner that the trial judge made disparaging remarks about plaintiff's counsel in front of the jury); *Meiselman v. Byrom*, 207 F. Supp. 2d 40, 43 (E.D.N.Y. 2002) (denying plaintiff's motion for a new trial, in part, because her conclusory allegation that opposing counsel tampered with the evidence was insufficient).

Accordingly, because there is no basis to conclude that the composition of the jury biased the verdict against Plaintiff, the Court denies Plaintiff's motion for a new trial on this ground.

8

## CONCLUSION

For the reasons set forth above, the Court finds that the jury's verdict was neither seriously erroneous nor a miscarriage of justice. Accordingly, Plaintiff's motion for a new trial pursuant to Rule 59 is denied.

                                                                                                   SO ORDERED.

                                                            */s/ Pamela K. Chen*
                                                            Pamela K. Chen
                                                           United States District Judge

Dated: September 23, 2024
       Brooklyn, New York

9